HAYNES, J.
This action was brought in the court of common pleas for the purpose of obtaining the partition of certain property, known as the Opera House property, in Toledo. A decree was taken in that case in that court and an appeal was taken to this court. After it came here there was a demurrer filed to the answer and cross-petition of Sarah M. Standart, whioh was very fully argued at the time, and an opinion was delivered by Judge Scribner upon that demurrer. With that opinion as thus delivered, we still remain content, and abide by it as stating the law of the case. In addition to the prayer for a partition in the petition as originally filed in the court of common pleas, there was also a prayer for an accounting as against Mrs. Standart and as against her mother, Mrs. Wheeler, or persons who stood in her shoes, for rents and profits.
The case generally shows that the property in question — the real estate — was owned by the heirs of Lyman Wheeler, who died in the year 1867, leaving surviving him his wife and three children — Ellen Wheeler, mariied to Louis Wachenheimer, Robert J. Wheeler and Sarah M. Wheeler, since married to Mr. Standart, and mentioned here as Sarah M. Standart. The general facts further show that prior to the year 1871, there was a sort of a family arrangement entered into that they would put up upon the property an opera house, and an opera house was built. To raise money for the opera house, the heirs sold certain property, and perhaps mortgaged other property, and Mrs. Wheeler herself contributed towards the building a large sum of money, since said to have been $15,000; and there was contributed to the fund also, and used in it, moneys belonging to Sarah. M. , Wheeler, now Sarah M. Standart, amounting to about $12,000, the money being at that time in the hands of her guardian, Mathias Boos.
The controversies arising here are mainly these: First I will mention that of Mrs.' Standart, who claims that there should be allowed to her upon the partition of the property the amount of money that she advanced or contributed towards the erection of the building upon the property. In April, 1881, Mrs. *694 Wachenheimer died, leaving the plaintiffs as her heirs at law. In 1888 Mrs. Wheeler died, leaving as her heirs either her children or the children of her children. It is claimed on the part of the children of Robert J. Wheeler-who were made parties here — that they have an interest in the property which originally belonged to R. J. Wheeler, as the heir of his father, and it is claimed that that comes to them by virtue of the fact, that the father conveyed his interest to their grandmother— Mrs. Wheeler — and that she willed to them the same portion of the real estate that was owned by their grandfather. It is claimed on behalf of the plaintiffs that they have á right aside from the right to claim that they are parties to the account for rents and profits received, that they have a right by subrogation as against the children of Robert J. Wheeler, upon this account; it is claimed by them that the estate of Lyman Wheeler — the heirs — paid oil' and satisfied certain liens that had been placed by Robert J. Wheeler upon his undivided interest in the premises, to secure certain creditors of his, and that inasmuch as the proceeds or moneys belonging to the heirs of Lyman Wheeler went to pay the debts of Robert J. Wheeler, they should be subrogated to the rights of those creditors as against the interest of Robert .T. Wheeler or his children, for their reimbursement. There is also a claim made on behalf of the plaintiffs that they ought to have allowed to them certain rents and profits that should have come to them from this property by virtue of what should have come to the father after the death of the mother — that he had aright to the rents, income and profits of an undivided one third, as a tenant by curtesy, and it is averred and stated, and there is no denial of the fact, that whatever rights of that nature he may have had he has conveyed to the plaintiffs as his children.
Now, upon these various matters I will speak. After the demurrer was overruled to the answer and cross-petition of Mrs. Standart, the case was sent out to a master to take evidence and report. The evidence taken before the master has been reported to us and is before us, and the ease has come on for hearing before us upon that testimony, and such other testimony as the parties choose to produce; and I may say right here, that it is going to be exceedingly difficult to do exact justice between these parties, for the reason that the evidence and proceedings of the parties in the management of this property during the period for which it has been running —now some twenty-two years up to the time of this suit — are so uncertain and indefinite that no court can state correctly the account between them.
The property was managed for some time by Robert J. Wheeler, on behalf of his mother, who was the administratrix of the estate of Lyman Wheeler, deceased. Afterwards it was managed for some time by Louis Wachenheimer, the husband of Helen Wachenheimer. Afterwards the property was mortgaged, and was managed by John T. Newton, of the -firm of Kent, Newton & Pugsley, who received a salary for the management and collected and distributed the rents ahd profits. After that the property went through the process of being foreclosed under certain proceedings, and was bid in under an arrangement, of which I shall speak hereafter, but was bid in in the name of the parties who originally had it, Mrs. Maria *695 P. Wheeler, she taking the interest that was held by Robert J. Wheeler. Now generally it is said that these rents and profits were barely sufficient to run the expenses of the concern. It is shown that there was a sum paid each year to Mrs. Maria Wheeler, which went to her support and maintenance — perhaps $100 a month — and there was also paid some sum to Mrs. Stand-art, $50 a month, I think; beyond that, the rents and profits, as it was claimed, all went upon the building to pay the expense of running it. Whatever books of account were kept, have, in the main, been lost or have disappeared. What the income was of the property and what the outgoes were, in detail, it is impossible to say, and perhaps is not known; so far as that is concerned, we shall not attempt to state any ac ■ count; it is sufficient! that the parties allowed it to go on, and at this time the moneys seem to have been paid out, some to one and some to another.
It is claimed that there should be something allowed to Louis Waohenheimer for that interest in rents and profits, but it appears that for some years he had possession of this prop • erty and it does not appear but what he had his* use and income at that time. There is nothing shown as to what was done during those years with the property. It is shown that this money which was realized from the mortgage, about $1,200 of it, was paid to Louis Waohenheimer for the benefit of the heirs wh®se agent he was, but what became of the money we are unable to learn from the record. It was undoubtedly used in the estate, but it does not appear for what purpose. It does not appear that there was any such amount of profits or rents and income as would entitle him to receive any definite sum or special amount of such rents and income for that interest. It is admitted that he was entitled to it, but we cannot undertake to make a settlement of the account here.
In regard to the claim of Mrs. Standart we have no doubt, from the authorities and the law of the land, that Mrs. Stand-art is entitled to the moneys whielj were put into the concern that went for the benefit of the property. The amount of that claim is a matter of more difficulty. That upon a partition of this property being made a court of equity has jurisdiction to take into consideration and to allow her whatever she put in for the benefit of this property out of the proceeds of a sale of the property, having reference to the sums that shall arise from a sale of the property, we do not doubt. But it does not stand in the position of a lien to be paid in full with interest: it stands rather in the nature of an investment made by her in this property. Out of that investment she was entitled to have from time to time a share of the rents and profits and an allowance perhaps with reference to the amount which she had put in, and the deterioration of the property during the time it was used — during all the time down to the time of the sale of the property — would fall upon the estate and she would have to submit to suffer her share of the loss. Taking ' that into consideration, we' have to look to the value of the property at the time of the sale, that is to say, to the value of the improvements; but, since the commencement of this suit the property has burned. There was carried upon it insurance, or several OOPTRIGHT, 1900, BT OA.KL O. JAHH. *696 policies of insurance, and there was received from the insurance companies a certain amount of insurance money which represents the value of the building. The adjustments of that loss are not here in evidence. It seemed to be shown by Mr. Smith, who was the receiver at that time, that he received a certain sum of money. Presumably that covered the building and covered also the whole building, the foundations of the building and the injuries to those; and to speak of that because it was said here that there is a foundation there that is worth something, on the one hand, and on the other hand it is said that the foundations are not worth anything and would not increase the selling character to any material amount. Upon that there is no evidence placed before us, and we can only stand upon the assumption that the money that was received upon these insurance policies represents the whole building including the cellar or foundation; if there was any salvage upon that, it does not appear. The whole property cost in the neighborhood of $70,000, with the improvements. The insurance represented about half that sum, so that the loss upon the investment made by Mrs. Standart would amount to about one-half of the amount which she invested, and taking that money into consideration and to some extent necessarily lumping it, that is to say arriving as nearly as we can from the faots in the case, we award to her the sum of $6,500, to be paid out of the proceeds of the property if the property is sold. It is said here in argument that undoubtedly the property will have to be sold in order to make a partition of the property, that it cannot be parted without a sale. If, however, there should be no sale of the property, she would be entitled to two-thirds of that sum out of the two-thirds interest of the other two parties. Of course when that whole $6,500 is to be paid out of the proceeds of the sale she pays herself one-third of the sum.
Now in regard to the interest of the plaintiffs by reason of his subrogation to the payment of the claims of Bobert J. Wheeler, that matter raises here some doubt and some uncertainty-more doubt and uncertainty, perhaps, or as much as some other parts of the evidence of the claims. It seems that at the time of the division of the property — of the estate and personal property of Lyman Wheeler — that there was paid over $10,000 to Mathias Boos as the guardian of Sarah M. Wheeler, which went into this property, together with some other moneys, making in all about $12,000. There was paid to Mrs. Maria P. Wheeler, as the widow of Lyman Wheeler, for her dower interest and for her share of the personal property — for her share of the personal property,'I suppose rather than for her dower interest — the sum of $16,000, which it is claimed, went into this buildiug. There was paid over to Mrs. Wachenheimer the sum of $10,000, her share, no portion of winch went into this buildiug, so far as the evidence discloses. There was paid over to Mr. E. J. Wheeler his amount of $10,000, but not in cash, and a portion of that went to pay some notes and interest, but at any rate the whole investment went for his private business as he was engaged at that time in carrying on a lumber business in this city, and no portion of that went into the building at that time. Now these matters ran along and *697 it appears that at some time after the death of the father, that Robert J. Wheeler had mortgaged his one-third interest in the Wheeler opera house property to certain of his creditors for an aggregate of $3,000 or $4,000, and perhaps more, I don’t know how. much, and certain creditors proceeded to make a sale of that property. There was a mortgage upon the whole property, and such proceedings were had as that the whole property was sold. Now, in making a sale of that property and in paying off the mortgage, a new mortgage was given, an increased mortgage perhaps, a mortgage for $35,000, and when that was taken and that money was received an adjustment of these various interests was made. It is said, and we believe it to be true, from the evidence, that it was agreed between the parties at that time that the property should be bid in in the name of Maria P. Wheeler, who was still called the administratrix of Lyman Wheeler, and that she should make a will whereby she should adjust the various interests of the heirs and apportion the property so that they would have their just rights in the whole property. It was through her that the various rights and advances to these parties was to be worked out. It seems that at some time, just when, I do not know from the evidence before me — for I do not find the deed — that Robert J. Wheeler had conveyed to his mother his undivided one-third interest in the opera house, but had conveyed it subject to the mortgages which he had placed upon it with the understanding and agreement that she was to pay off these mortgages. It would seem, and I think it is true, that Mrs. Wheeler, for thp purpose of helping Jeff, and favoring him some, to the extent of the amount of these liens upon that property, and perhaps further, made advances to him and for his benefit, which were to be in the nature of a gift to him. What she intended to do beyond that, does not appear precisely because that thing was never carried out in just that form. It transpired afterwards and after the matters had been carried forward and the claims had been paid off, that the property besides being taken in her.name — or the deed being taken in her name — it was taken in the name of herself and of Mrs. Standart and of Mrs. Waohenheimer. Mr. Waehenheimer offered to make deeds for her interest to the mother and carry out this arrangement, but her husband declined to sign the deed, and that was never carried out. The moneys to pay off these mortgages it was said came out of the money which was realized from the new mortgage of $35,000. However, I find evidence of a mortgage given to one Thompson, who was the principal creditor, upon some other property in the city of Toledo, that was made by Mrs. Wheeler, Mrs. Standart and Mrs. Waehenheimer, whereby they secured to him two note* for twelve hundred and some odd dollars each, making about $2,500 in all,'which would look as though it were some debt which was originally upon the opera house property. It is said that Mrs. Wheeler had advanced for Robert J. Wheeler $7,500. It was argued here, very earnestly by the plaintiff in this ease, speaking for himself, that that could not be, because Mrs. Wheeler did not have that amount of money tp advance to him, and that for these reasons: that the amount of her interest in the personal property of her husband, $16,000, was put *698 into the opera house, and the only property perhaps, that she is supposed to have had was some interest in some property in Chicago, and what she has received from that does not appear, and, for all that appears it was a very small sum. It does not seem to have been very large, because nobody remembers that she received any such money that amounted to much. Nów I think that the true facts of the case are: that Mrs. Wheeler intended to help Robert J.; he had got into trouble financially, and his property was being tied up, and he was losing money and he had a wife and family, and I think that through this process and through this arrangement, that the amount of the indebtedness that was upon his interest in this property, was to be assumed and carried by Mrs. Wheeler, and was to be charged up as against her $16,000 — was to be, if you please, a payment of that $16,000 which she was carrying, and for that purpose she was to have the whole title to the property to herself, and was to adjust these matters by her will. It must be remembered that she advanced $16,000 upon this property. She had no right in the property beyond her right to have assigned to her dower, which never was assigned or apparted to her in any manner or form, and whether she, in equity, would have any claim to have any proceeds of this sale applied to the payment of $15,000, I am not advised. I do not know at present of any such claim, although there is a strong equity in that behalf. It does not amount to a great deal here, because that matter was undisposed of, and that money, if paid • over, would simply be a payment from one hand into the other, that is to say, the heirs would share equally in her estate,and if they paid that money in, it would come right back to them, and so the matter is not to be taken into consideration in this decree; their interests do not suffer as to the amount of money she had in there over and above this amount which was allowed to go to the benefit of Robert J. Wheeler, and which, I think, was a good deal less than $7,500, and, so far as I can see, did not amount to more than three or four thousand dollars. And entertaining that view, we hold against the claim of the plaintiff that there was á right to subrogation as against the share of Robert J. Wheeler, as the only sum that will be awarded to be paid out of this property is the amount that has been awarded to Mrs. Standart. There will have to be an order for the partition of the property, and there should be three commissioners appointed to appraise the property under the statute.
Lyman W. Waohenheimer and Frank 3. 3unt, for Defendant.
J. K. Hamilton, for Mrs. Standart.
. E. W. Tolerton, for certain other parties.